LIBERTY MANUFACTURING CORPORATION, PLAINTIFF-APPELLEE, *v.* UNITED STEELWORKERS OF AMERICA, AFL-CIO, ET, DEFENDANTS-APPELLANTS. (Two cases.)

Ohio Appeals, Seventh District, Trumbull County.

Nos. 1466, 1479. Decided March 8, 1961.

*Messrs. Harrington, Huxley & Smith*, for plaintiff-appellee.
*Messrs. Green, Schiavoni & Murphy*, for defendants-appellants.

*Per Curiam.* These two appeals in case number 1466 and case number 1479 are before us on questions of law only, and since the facts giving rise to the two cases arise out of similar

backgrounds the two cases will be consolidated for the purpose of this opinion.

This court is not sitting as a chancelor and trying this case de novo, but as the case is presented this court is reviewing the proceedings in the common pleas court with the view not of determining whether the trial court's decisions were in accord with the principles of equity but whether the trial court's orders were in accord with the rules of law.

The first of these appeals attacks the trial court's order finding three officers of the union guilty of contempt and sentencing them for claimed violations of the temporary order.

The second of the appeals perfected as to questions of law only, attacks the validity of the permanent injunction issued below.

The facts are brief, simple and in no wise complicated. On October ninth the trial court ex parte granted a temporary restraining order enjoining the defendants (all of whom resided in Mahoning County while the plant picketed is located in Trumbull County), from interferring with or intimidating the plaintiff and its agents from congregating, loitering or trespassing on plaintiff's property, and limiting the pickets to two pickets at each of the two entrances to the plant.

Shortly after the filing of the petition the court granted leave to the plaintiff to add two additional parties defendant, each of whom were residents of Trumbull County.

Defendants filed their answer to this pleading on December tenth, making certain admissions and denials. A reply thereto was filed by the plaintiff on the same day, as well as an affidavit that the defendants were willfully disobedient to the court's restraining order, specifically naming the wrong doers and giving the time, place and manner of disobedience in the affidavit.

Hearing was had on the motion to punish for contempt and the trial court found all of the defendants guilty of contempt (twelve or more in number), except Albert J. Shipka and William Stana, and sentenced Mary Mansour, Barbara Nelson and Charles J. Carney to pay a fine of $200.00 each. It is from this sentence that the first of these two appeals is before us. These defendants are seeking a reversal of their sentences and fines imposed as punishment for contempt.

This case was tried over protest of defendants that the jurisdiction of the subject matter had been preempted to the National Labor Relations Board by the Taft Hartley Act and its amendments.

If the picketing prior to the entry of the restraining order had been peaceful the defendants' contention is true under the National Labor Relations Act, Title 29, U. S. C., Section 151, and following.

If, however, the evidence before the court would substantiate a conclusion that the order was necessary to preserve the public peace and welfare against interference with the free ingress and egress of non-striking employees and others then under the police powers of the state the state court had jurisdiction. *Youngdahl* v. *Rainfair*, 355 U. S., 131. *Workers* v. *Wisconsin*, 351 U. S., 266.

The doctrine of preemption recognized by the United States Supreme Court in *Garner* v. *Teamsters Union*, 346 U. S., 486, does not, therefore, prevent state courts by the injunction method from controlling picketing so as to prevent mass picketing, threats of physical injury or property damage, obstruction of streets, sidewalks, driveways, trespass on private property, or even attempts at peaceful persuasion which amount to harassment.

The language of the restraining order is broad. Such orders must be interpreted so as to restrict the enforcement of the order to the areas not preempted by the National Labor Relations Board. We presume that the trial court did so and that the contempt findings against Mary Mansour and Barbara Nelson were based upon the violation of the order with regard to mass picketing and obstruction of entrances to the plaintiff's property. There is clear and convincing evidence of these violations in the record.

After fully reading the bill of exceptions we conclude there was evidentiary basis for the restraining order which was issued on the verified petition and for the sentences which were imposed on the defendants Mary Mansour and Barbara Nelson. See *State, ex rel. Beil, Prosecuting Attorney,* v. *Dota; Doe (DeNiro),* 168 Ohio St., 315.

Defendants further argue that jurisdiction of their per-

son had not been acquired by the court since the defendants at the time of the filing of the original petition were all residents of Mahoning County. Of course, at the time of hearing there were two defendants from Trumbull County before the court, and the infirmity of the matter of jurisdiction was cured by the filing of the answer by the defendants to the petition. So the matter of jurisdiction both as to the person and subject matter is easily disposed of.

A more troublesome question arises in the consideration of the court's finding against the defendant, Charles J. Carney, and the sentence imposed, he being a staff representative of the union, and we must now treat this matter in the light of the sentence embraced in the bill of exceptions.

A moment's reflection will show that nothing in Carney's conduct outside of his telephone calls would warrant the court in finding him guilty of contempt and in imposing a $200.00 fine as and for punishment for such contempt.

Just what did he do in making these telephone calls that amounted to any violation of the court's order? He had been served with a copy of the restraining order, had called a meeting of the Local Union (Number 1330) at Union Hall, read and explained the court's injunction, and advised the members to heed it and in fact called a second meeting and explained the meaning of the restraining order in greater detail (R. 237).

He called Pat Stanfar and talked to her, called Coleman Esso and talked to Mrs. Esso and Mrs. Stana, and Mr. Coddington of the Society for the Blind, and Mr. Freeman Scott, and perhaps others, but he testified that he said nothing of a threatening nature.

Pat Stanfar said he asked her more or less not to cross the picket line, and that "he was going to make trouble for me if I did." She testified that she did not know Senator Carney personally.

Antoinette Esso, mother of Coleen, who was working at the struck plant testified that she answered the phone and Mr. Carney told her that he was Charles J. Carney, a representative of the United Steel Workers Union, and that her daughter was crossing the picket line, and to tell her not to go to work, and "Your husband is a city fireman, and if he wants to hold

his job tell your daughter not to go to work.'' After a sparring over their respective rights and conduct the conversation ended. She did testify that ''he didn't use any out of the way language but he didn't talk very nice when I told him I didn't think it was nice,'' and she further testified that he said nothing threatening.

Defendant Carney talked to Mr. Codding, Fran Scott, and Mr. Cook of Motor Express on the phone, but there was nothing in the conversation as revealed by the record that in the remotest sense could amount to hindering, intimidating or threatening anyone.

In what degree did he by his phone talks terrify or overawe or threaten anyone?

It may be that the National Labor Relations Act in prescribing the legitimate right of both employers and employees in their relations with each other, and in defining and prescribing practices on the part of labor and management provides for just what is unfair labor practices in the situation, but there is no evidence in the record warranting the court in finding the defendant Carney guilty of violation of the restraining order and contempt of the court.

This is a contempt proceedings brought to vindicate and uphold the court's authority. The presumption of innocence obtains in contempt cases, and the charge must be supported by evidence that is clear, positive and convincing. No one contends that he was in direct contempt of any order and the most that the charge could possibly imply would be a constructive contempt, and this we find not to exist from the facts in this case.

Actions in contempt are quasi criminal and proceedings thereunder must be strictly construed.

Even under the Taft Hartley Act, Section 158, Paragraph 6, Sub-section (c) his contempt was not in violation of the act which provides:—

''The expressing of any view, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic or visual form shall not constitute or be evidence of an unfair labor practice under any of the provisions of this act if such expression contains no threat of reprisal or force or promise of benefit.''

We conclude that there is no lack of jurisdiction of the subject matter; that there is no lack of jurisdiction of the persons of the defendants; that there is probative evidence that acts violative of the temporary restraining order were committed by the two defendants, Mary Mansour and Barbara Nelson, and as to that aspect of these two appeals the judgment and sentence of the trial court is affirmed.

This action is dismissed as to the defendant, Charles J. Carney, but the judgments of the court below are in all other respects affirmed.

GRIFFITH, P. J., and DONAHUE, J., concur.
BROWN, J., not participating.