This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellants/Cross-Appellants, Thomas and Elizabeth Burick and Lo-Conn Motocross, Ltd. (collectively "the Buricks"), appeal from a judgment of the Wayne County Court of Common Pleas that permanently enjoined them from operating a commercial motocross track on property that they own in Franklin Township. We affirm.
{¶ 2} The Buricks own an eighty-two-acre tract of land in Franklin Township. On a four-acre section of the property, the Buricks constructed a commercial motocross track, a dirt track on which small and medium motorcycles race. The track began operation on June 1, 2001. The track's hours of operation were confined primarily to weekend hours: late afternoon and evening hours on Thursdays and Fridays, and morning and afternoon hours on Saturdays and Sundays. The Buricks planned to expand their operation in coming seasons.
{¶ 3} There are no zoning laws in place in Franklin Township. The area surrounding the Buricks' property is primarily residential and rural, with a sand and gravel business nearby as well. Many of the residents in this area have owned their homes for a decade or longer.
{¶ 4} Prior to the track opening for commercial purposes, Roberta Angerman and one hundred eight other neighboring property owners ("the Plaintiffs"), fearing the potential "noise, odors, dust, congestion, and other offensive behavior" that would emanate from the track, filed this civil suit against the Buricks. The Plaintiffs sought injunctive relief as well as damages.
{¶ 5} Following a bench trial, the trial court found that the Buricks' commercial motocross track constituted an absolute nuisance and enjoined the Buricks from using the track for commercial purposes. The trial court did not enjoin the Buricks from using the track for reasonable family purposes. The Buricks appeal and raise six assignments of error. The Plaintiffs cross appeal, raising two cross-assignments of error.
 Assignment of Error I
{¶ 6} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THE MOTOCROSS TRACK WAS AN ABSOLUTE NUISANCE."
{¶ 7} In their first assignment of error, the Buricks contend that the trial court erred as a matter of law in finding that the motocross track was an absolute nuisance. Instead, they insist, the trial court should have analyzed the facts under the law of qualified nuisance. For the reasons that follow, this court finds no error in the trial court's application of the law of nuisance.
{¶ 8} Ohio case law does not provide a clear definition of the terms "absolute nuisance" and "qualified nuisance." As aptly noted by another appellate court, "the law in Ohio is far from clear in this area[.]" Hupp v. Nelson, 5th Dist. No. 2002CA00077, 2003-Ohio-255, ¶ 33. Another appellate court noted earlier that "`[t]here is perhaps no more impenetrable jungle in the entire law than that which surrounds the word "nuisance."'" Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 712, quoting Prosser Keeton, The Law of Torts (5 Ed. 1984) 616, Section 86.
{¶ 9} The Ohio Supreme Court has distinguished the terms absolute and qualified nuisance as follows:
 "1. An absolute nuisance, or nuisance [per se], consists of either a culpable and intentional act resulting in harm, or an act involving culpable and unlawful conduct causing unintentional harm, or a nonculpable act resulting in accidental harm, for which, because of the hazards involved, absolute liability attaches notwithstanding the absence of fault.
 "2. A qualified nuisance, or nuisance dependent on negligence, consists of an act lawfully but so negligently or carelessly done as to create a potential and unreasonable risk of harm, which in due course results in injury to another. (Taylor v. City of Cincinnati, 143 Ohio St., 426, approved and followed.)" (Emphasis added.) Metzger v. Pennsylvania, Ohio Detroit RR. Co. (1946), 146 Ohio St. 406, paragraphs one and two of the syllabus.
 {¶ 10} The difference between an "absolute nuisance" and a"qualified nuisance" is not the type of interference (such as noise) or"the right or injury asserted[.] *** Rather, the distinction between`absolute' and `qualified' nuisance depends upon the conduct of thedefendant." Hurier v. Gumm (Nov. 1, 1999), 12th Dist. No. CA99-01-005. Asquoted above, an "absolute nuisance" requires intentional conduct on thepart of the defendant; a qualified nuisance exists only because of thedefendant's negligence. "`Intentional,' in this context, means `not thata wrong or the existence of a nuisance was intended but that the creatorof [it] intended to bring about the conditions which are in fact found tobe a nuisance.'" Dingwell v. Litchfield (Conn. 1985), 426 A.2d 213,quoting Beckwith v. Stratford (1942), 29 A.2d 775.
 "As to nuisances to one's lands: if one erects a smelting house for lead so near the land another, that the vapor and smoke kills his corn and grass, and damages his cattle therein, this is held to be a nuisance. And by consequence it follows, that if one does any other act, in itself lawful, which yet be done in that place necessarily tends to the damage of another's property, it is a nuisance: for it is incumbent on him to find some other place to do that act, where it will be less offensive." 3 Blackstone (1768), Commentaries on the Laws of England 217-218.
{¶ 11} There is no question here that the Buricks intentionally built and operated the motocross track, which created a great deal of noise. Even if they did not intend to generate noise, it apparently was an unavoidable byproduct of their intentional activity.
{¶ 12} Early Supreme Court cases explained the distinction between absolute and qualified nuisance in basic terms, convincing this court that this situation involves an absolute nuisance rather than a qualified one. A qualified nuisance requires proof of negligence because, otherwise, there is no nuisance. Taylor v. Cincinnati (1944),143 Ohio St. 426, upon which the trial court and both parties rely, quoted extensively from Judge Cardozo "in the leading case of McFarlane v. City of Niagara Falls, 247 N.Y., 340" to set forth several situations in which a qualified nuisance arises. Most examples involved negligent maintenance of roads, buildings, trees, electrical wires, boilers, oil tanks, etc. See Taylor at 441-444. Properly maintained, these roads, buildings, trees, electrical wires, and oil tanks did not constitute nuisances for they did not cause injury to anyone. See id. Consequently, to establish a nuisance in these situations, a plaintiff must prove negligence by those who have a duty to maintain the areas.
{¶ 13} Absolute nuisance, on the other hand, does not require proof of negligence. "Where the harm and resulting damage are the necessary consequences of just what the defendant is doing, or is incident to the activity itself or the manner in which it is conducted, the law of negligence has no application and the rule of absolute liability applies." Id. at 432. "`The primary meaning [of nuisance] does not involve the element of negligence as one of its essential factors. *** One who emits noxious fumes or gases day by day in the running of his factory may be liable to his neighbor though he has taken all available precautions.'" Id. at 441-442, quoting McFarlane, supra.
{¶ 14} Some of the confusion in the area of noise nuisances has resulted from a few Ohio appellate court cases that have focused on the offensive noise itself, rather than on the culpability of the defendant's conduct, to conclude that noise that is not completely intolerable is not an absolute nuisance or nuisance per se. See Christensen v. HilltopSportsman Club, Inc. (1990), 61 Ohio App.3d 807; Gustafson v. CotcoEnterprises, Inc. (1994), 42 Ohio App.2d 45; Lykins v. Dayton MotorcycleClub, Inc. (1972), 33 Ohio App.2d 269. This court is not persuaded by the reasoning of these cases. None of these cases follows Ohio Supreme Court authority to support its conclusion that noise is not a nuisance per se or absolute nuisance. Instead, Lykins relies on no authority, Gustafsonrelies on out-of-state cases and Lykins, and Christensen relies solely onLykins. More importantly, the reasoning of each court completely ignores the well-recognized distinction between absolute and qualified nuisance: the culpability of the defendant's conduct. Despite the label that each court attached to the potential nuisance (absolute, qualified, etc.), each case clearly recognized that noise generated by a race track or drag strip can constitute a nuisance and that a trial court may enjoin such a nuisance without any proof that the defendant acted negligently. In fact, none of these cases even mentioned the concept of negligence, despite the fact that one of the courts claimed to conduct a qualified nuisance analysis and found that a qualified nuisance had been established by the evidence. See Christensen, at 812.
{¶ 15} This court is more persuaded by Ohio appellate opinions that have analyzed the problem of intentionally created excessive noise as an absolute nuisance. See, e.g., Zang v. Engle (Sept. 19, 2000), 10th Dist. No. 00AP-290; Coe v. Pennington (Apr. 6, 1983), 12th Dist. No. 470. These courts followed the law of the Ohio Supreme Court and their reasoning is sound.
{¶ 16} Consequently, the Buricks have failed to demonstrate that the trial court erred by applying the law of absolute nuisance. Moreover, even if the "absolute nuisance" label was improper, the Buricks' own cases fail to support their argument that the trial court erred in failing to require the Plaintiffs to prove that the nuisance was the result of the Buricks' negligence. The first assignment of error is overruled.
 Assignment of Error II
{¶ 17} "THE TRIAL COURT ERRED IN ISSUING A PERMANENT INJUNCTION AND FAILED TO BALANCE THE PARTIES' RESPECTIVE INTERESTS UNDER THE REQUIRED CLEAR AND CONVINCING EVIDENCE STANDARD, RESULTING IN AN UNREASONABLE PROHIBITION OF THE APPELLANTS' LEGAL ACTIVITY."
{¶ 18} Through their second assigned error, the Buricks maintain that the trial court failed to adequately balance the competing interests of the parties in its decision to permanently enjoin the commercial operation of a motocross track. Although they are correct that the trial court must give due consideration to the rights of all parties in interest, not just the party seeking the injunction, the decision whether to grant or deny an injunction rests within the sound discretion of the trial court. Perkins v. Quaker City (1956), 165 Ohio St. 120, syllabus. The trial court also retains broad discretion when framing the terms of an injunctive order. Superior Sav. Assn. v. Cleveland Council ofUnemployed Workers (1986), 27 Ohio App.3d 344, 346. An injunction will not be reversed on appeal absent an abuse of discretion. Garono v. State
(1988), 37 Ohio St.3d 171, 173. "The term `abuse of discretion' connotes more than an error or law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
{¶ 19} The Buricks' argument that the trial court did not consider the competing interests of the parties is contradicted by the explicit reasoning of the trial court in its eight-page, single-spaced decision. As owners of the property, and in the absence of zoning laws in the area, the Buricks had the legal right to construct and operate the motocross track. The trial court noted, however, that the Buricks had recently purchased this property and had just constructed and opened the motocross track. Although Thomas Burick testified that he would like to work fulltime at the track during race season and make a living from the operation of the track, at the time of trial, he had another fulltime job. Elizabeth Burick was also employed elsewhere as an attorney. Consequently, any income from the track was not the Buricks' sole means of financial support.
{¶ 20} Competing with the Buricks' interests were those of several neighboring property owners. The trial court summarized the testimony of several of the Plaintiffs who testified. The Plaintiffs, who reside anywhere from 1,000 feet to one mile from the track, purchased their homes prior to the Buricks' opening of the motocross track. Many of the Plaintiffs had lived in their homes for over a decade. The testimony of most of the Plaintiffs was similar: the noise generated by the track was piercing and annoying and interfered with the peace and quiet that they enjoyed in the area before the track was opened. One plaintiff testified that she had considered moving from the area and several testified that they could no longer enjoy some of the outdoor activities that they had enjoyed before the track opened. As Thomas Burick had testified that nothing could be done to the motorcycles to reduce the level of noise that they generate, the Plaintiffs would have to tolerate increasing noise and interference if the commercial operation of the track was not enjoined.
{¶ 21} Expert testimony was offered on the level of noise generated by the track. The trial court indicated that it found the Plaintiffs' experts more credible than the expert presented by the Buricks. One of the Plaintiffs' experts testified about the noise tests that he conducted in several locations. Track noise levels measured at the homes of several of the Plaintiffs were in the maximum range of 52.4 decibels to 72 decibels. At one residence, noise levels were measured above 65 decibels several times. The Plaintiffs' other expert explained that, at a sound level of 65 decibels, it would be difficult for two people to carry on a conversation at a distance of one meter.
{¶ 22} In addition to hearing the testimony of expert witnesses and several of the property owners, by consent of the parties, the trial judge had visited "the areas which are the subject of this lawsuit, including the motocross track and all of the neighborhoods where Plaintiffs resided." He was able to observe the area and hear for himself the noise generated by the motocross track while motorcycles were running on the track.
{¶ 23} The Buricks have failed to demonstrate that the trial court did not thoroughly consider the competing interests at stake or that it acted in an unreasonable, arbitrary, or unconscionable manner by enjoining the commercial operation of a motocross track by the Buricks. The second assignment of error is overruled.
 Assignment of Error III
{¶ 24} "THE TRIAL COURT ERRED AS A MATTER OF LAW BY ADMITTING EXPERT TESTIMONY WITHOUT PROPER FOUNDATION AND BASED ON HEARSAY IN VIOLATION OF OHIO RULES OF EVIDENCE 703 AND 705."
 Assignment of Error V
{¶ 25} "THE TRIAL COURT ERRED AS A MATTER OF LAW BY ALLOWING THE USE AT TRIAL OF THE AUDIO PORTION OF SEVERAL VIDEO TAPES CONTAINING HEARSAY."
{¶ 26} These two assigned errors will be addressed together because they are closely related. The Buricks contend that the trial court erred in admitting certain evidence that failed to comply with the Ohio Rules of Evidence. This was a bench trial, however, and because the trial judge was acting as fact finder, he is presumed to have "considered only relevant, material, and competent evidence in arriving at [his] judgment unless it affirmatively appears to the contrary." State v.White (1968), 15 Ohio St.2d 146, 151. Because nothing in the trial court's judgment suggests that it relied upon inadmissible evidence, the Buricks have failed to demonstrate error. The third and fifth assignments of error are overruled.
 Assignment of Error IV
{¶ 27} "THE TRIAL COURT ERRED IN ALLOWING TESTIMONY IN VIOLATION OF ITS OWN SEPARATION OF WITNESSES ORDER."
{¶ 28} The Buricks next contend that the trial court erred by violating its own separation of witnesses order, which, according to the Buricks, the trial court made in response to their written motion made at the commencement of trial. A review of the record does not reveal any such written motion filed by the Buricks nor does it reveal any order filed by the trial court. The "order" to which the Buricks refer apparently consists of oral statements made by the trial court prior to the commencement of the trial. In addition to the fact that this court cannot understand exactly what the trial court decided when discussing the issue of separation of witnesses, there is no separation of witnesses "order" because "[a] court of record speaks only through its journal and not by oral pronouncement ***." Schenley v. Kauth (1953), 160 Ohio St. 109, paragraph one of the syllabus. Consequently, the Buricks have failed to demonstrate any error and their fourth assignment of error is overruled.
 Assignment of Error VI
{¶ 29} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN FAILING TO DISMISS AS PARTIES THOSE PLAINTIFFS WHO FAILED TO APPEAR AND TESTIFY AT TRIAL."
{¶ 30} For their final assignment of error, the Buricks contend that the trial court erred by failing to dismiss the plaintiffs who did not appear at trial. It is fundamental that, to demonstrate reversible error, an appellant must not only demonstrate an error by the trial court but also that he was materially prejudiced by that error. Nilavar v.Osborn (2000), 137 Ohio App.3d 469, 500. Even if the trial court committed error in this respect, the Buricks do not even attempt to explain how they were prejudiced. None of the plaintiffs was awarded damages and this case is over. The trial court found that the Buricks' commercial operation of the motocross track interfered with the use and enjoyment of the property of sixteen specific plaintiffs, all of whom appeared at trial. An injunction was granted in the name of only those sixteen plaintiffs. Consequently, the plaintiffs who did not appear at trial did not acquire any rights, nor do they have any pending claims, against the Buricks. Because the Buricks have failed to demonstrate how they could have been prejudiced by the trial court's failure to explicitly dismiss those plaintiffs, the sixth assignment of error is overruled.
 Cross-appeal
{¶ 31} In their cross-appeal, the Plaintiffs raised two cross-assignments of error, the first of which was raised in the event that this court sustained any of the Buricks' assignments of error. Because this court found no merit in any of the Buricks' assigned errors, the first cross-assignment of error need not be addressed.
 Cross-Assignment of Error II
{¶ 32} "THE TRIAL COURT ERRED IN FAILING TO AWARD DAMAGES TO THE APPELLEES FOR THE HARM SUFFERED AS A RESULT OF THE NUISANCE."
{¶ 33} The Plaintiffs contend that the trial court erred in failing to award them damages. The trial court awarded no damages because it made a factual finding that "[n]o economic damages to Plaintiffs have been proven in this action." The Plaintiffs do not dispute that they failed to establish economic damages but contend that they should have been compensated for the annoyance and irritation that they suffered during the period of time that the track was in commercial operation.
{¶ 34} The Plaintiffs essentially contend that the trial court's failure to award them damages was against the manifest weight of the evidence presented at trial. When reviewing the weight of the evidence, this court applies the same test in civil cases as it does in criminal cases. Tewarson v. Simon (2001), 141 Ohio App.3d 103, 115. "`The court *** weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" State v. Thompkins (1997), 78 Ohio St.3d 380,387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
{¶ 35} The Plaintiffs point to a few items of brief testimony regarding how several of the Plaintiffs were annoyed and inconvenienced by the noise and dust generated by the motocross track. Pointing to these few pieces of evidence falls far short of demonstrating that the trial court lost its way in failing to award the Plaintiffs damages.
{¶ 36} Moreover, the complaint filed by the Plaintiffs sought economic damages for the alleged diminution of the value of their property but, as to the alleged interference and annoyance, they sought to enjoin the nuisance. Nothing in their complaint suggests that they also were seeking compensatory damages for the annoyance and inconvenience that they suffered while the track was permitted to operate. The Plaintiffs were granted the injunctive relief that they sought. Consequently, they have demonstrated no error by the trial court. The second cross-assignment of error is overruled.
BAIRD, P.J. and WHITMORE, J. CONCUR