{¶ 63} I respectfully dissent because the court's contempt order accurately defined how the piles of scrap should be removed and gave adequate notice of that part of the property covered by the order. I would also find that the subject premises did not qualify as a valid preexisting use.
 A *Page 21 {¶ 64} In Superior Sav. Assn. v. Cleveland Council of UnemployedWorkers (1986), 27 Ohio App.3d 344, we stated that Civ. R. 65(D) requires that an injunctive order be specific and detailed enough to give adequate notice of the requirements imposed and not to be too vague to be understood. "Adequate notice" under Civ. R. 65(D) is that which an ordinary person reading the order would understand as being proscribed or prohibited. Planned Parenthood Assn. v. Project Jericho (Feb. 8, 1989), Hamilton App. No. C-860550.
 {¶ 65} Employing the ordinary person standard used in Civ. R. 65(D) shows that the court's injunction was not so vague that Cleveland Scrap could not be expected to understand what area described as the "hilltop" was subject to the contempt order. The hilltop was described by the certificate of occupancy as "7.6 acres for processing recycling scrap metals." The certificate also described the zoned property as "general industry." These descriptions were part of the legal description of the land, and were clear enough to inform the ordinary person of the area covered by the injunction. In fact, this 7.6 acres of land corresponded exactly to the land covered by Abrams' request for a variance. Any ordinary person would have known exactly what land was encompassed by the court's order.
 {¶ 66} Even if this language were somehow vague, Cleveland Scrap waived the right to raise it on appeal because it did not at any time in the proceedings *Page 22 
challenge the actual area defined by the court's order. As the city notes, the court very early on found that none of the parties had any questions about what part of the land was covered by the original certificate of occupancy to conduct scrap operations. By not raising an objection at that time, Abrams and Cleveland Scrap have waived the right to assert error on appeal.
 {¶ 67} I would also find that the injunction is not vague as to the requirement that the scrap piles be reduced by 20 percent. The city's ordinances require a minimum seven foot high fence, and further provide that scrap materials can be piled no higher than three feet over the top of the fence. Cleveland Scrap used seven foot tall fences, and the pictorial evidence suggests that some of the piles were close to 20 feet tall. Regardless of whether the initial 20-foot high pile had to be reduced in equal 20 percent increments from the initial measurement, or whether each succeeding reduction had to be 20 percent from the previous reduction, the incremental numbers are so closely matched that any differences between them would be so minimal as to be of no practical legal effect. No ordinary person could be confused by the court's order. *Page 23 
 B {¶ 68} I likewise find no merit to the conclusion that the city's height limitations on scrap piles do not apply to the scrap yard because it preexisted as a scrap yard before the enactment of the city's height limitations for scrap piles. As the city notes, the property in question had been used by a railroad up until it was sold to Abrams and his deed to that property was recorded in 1985. Although the railroad may have moved scrap, among other items, between rail cars as part of its operations, there is nothing in the record to show that the railroad used the property exclusively for scrapping.
 {¶ 69} There was evidence, however, to show that Abrams understood that he needed permission to engage in scrapping on the premises. Abrams applied to the city for a certificate of occupancy under Cleveland Codified Ordinance No. 327.02(c), which states that "[t]here shall be no change or substitution in the use of any existing building or premises and no extension of any existing use, nor shall any premises be occupied for any new use, until a certificate of occupancy has been issued." The yard itself qualifies as a "premises" under the city code, so Abrams understood that any change in the use of the hilltop would require a certificate of occupancy — hence, his application for a certificate of occupancy. *Page 24 
 {¶ 70} Moreover, the record shows that Abrams made a prior application for a variance that would allow him to use the hilltop for scrap purposes, thus manifesting his knowledge that he could not perform scrapping as a valid preexisting use. Even when the city mistakenly issued him a permit to use the hilltop for scrapping, it later revoked that permit claiming that it did not know of the elevation change in the land. Abrams took no appeal or other administrative action to contest that revocation.
 {¶ 71} At all events, Abrams' actions showed his recognition that the hilltop property did not qualify as a preexisting use for scrapping. It follows that the city's ordinances relating to the height of scrap piles and the screening of those piles from public view are completely enforceable against him. I would find that the court did not err by enforcing the city's ordinances and would affirm the court's ruling in all respects. *Page 1