OPINION
{¶ 1} Defendants-appellants, the United Steelworkers of America Local 5760 and Local 5724, appeal from four Monroe County Common Pleas Court judgments ruling on modifications to preliminary injunctions requested by plaintiffs-appellees, Ormet Aluminum Mill Products Corporation (Ormet Mill) and Ormet Primary Aluminum Corporation (Ormet Primary).
 {¶ 2} Ormet Mill is located on State Route 7 and is engaged in the operation of rolling and selling aluminum. Local 5760 represents the classified production and maintenance employees at Ormet Mill.
 {¶ 3} Ormet Primary is also located on State Route 7, approximately one to two miles from Ormet Mill, and is engaged in the production and selling of primary aluminum. Local 5724 represents the production and maintenance employees at Ormet Primary.
 {¶ 4} On November 22, 2004, Ormet Mill and Ormet Primary (collectively "Ormet") filed complaints against Local 5760 and Local 5734 (collectively "the union"). They alleged the following. Ormet Mill entered into a collective bargaining agreement with Local 5760 in April 2001 that was to run until August 31, 2004. Ormet Primary entered into a collective bargaining agreement with Local 5724 in May 2000 that was to run until July 31, 2004. However, pursuant to bankruptcy proceedings, Ormet submitted proposals to modify the terms of the collective bargaining agreements. Since November 22, 2004, members of the union have been on strike and have been engaging in unlawful mass picketing at both Ormet plants, including having more than 100 picketers, blocking and impeding traffic to and from the plants, and trespassing. The picketers have disrupted Ormet's operations and disrupted public order. Therefore, Ormet requested temporary restraining orders and preliminary injunctions restraining the picketers from engaging in numerous activities outside of Ormet plants.
 {¶ 5} The trial court issued temporary restraining orders (TROs) prohibiting various activities and regulating the picketing.
 {¶ 6} On December 2, 2004, the court issued identical preliminary injunctions in both cases. They prohibited the union from doing the following: (1) threatening, coercing, intimidating, assaulting, or inflicting physical harm on any persons performing their duties at, or traveling to and from the Ormet plants; (2) blocking or impeding any entrance to the Ormet plants; (3) causing, condoning, instructing, or allowing more than ten pickets at any time at or near any entrance to the plants; (4) picketing at any entrance in such a manner as to leave less than sufficient space for ingress to and egress from the plants; (5) trespassing onto Ormet's property at any time or for any act prohibited by the order, except that the union is permitted to erect and maintain one shelter on the side of State Route 7 opposite from the main entrances; (6) blocking or obstructing the public or private access roads to the plants or any other Ormet facility, however a burn barrel placed off the paved portions of the access road is permitted at each entrance; (7) damaging any vehicle or other property of Ormet, its employees, or persons doing business with Ormet; (8) throwing rocks or other objects at persons, vehicles, or equipment; (9) interfering with the repair or maintenance of light fixtures and security cameras; (10) discharging any explosive devices at or near any entrance to the mill, the roadways leading to the plants, or any other Ormet facilities; (11) engaging in any other unlawful act to interfere with Ormet in the conduct of its business.
 {¶ 7} Next, Ormet filed motions in both cases to modify the preliminary injunctions. In its motions, and supporting affidavits, Ormet alleged that violence had increased around the plants and picketers had been engaging in activities such as throwing objects at employees' vehicles, using sling shots to shoot objects at employees and guards, shining laser lights in the eyes of guards, and otherwise damaging vehicles. Ormet asked for several modifications to the preliminary injunctions in order to reduce the above listed activities, including ordering the removal of any plant-side shelters along State Route 7.
 {¶ 8} On December 23, 2004, the court denied Ormet's motions to modify. However, it added another order in each case — any structures that were erected on the plant-side of State Route 7, including any structures erected as "windbreakers," were to be immediately dismantled and removed.
 {¶ 9} The union filed timely notices of appeal from the trial court's December 23 orders on January 3, 2005. This court consolidated these two cases for purposes of this appeal.
 {¶ 10} Several months after the union filed its notices of appeal, Ormet again filed motions in both cases to modify the preliminary injunctions. It again requested that the court reduce the number of picketers permitted and make other modifications necessary to preserve the peace. Ormet requested nine specific modifications. It alleged that the violations of the existing preliminary injunctions and the violence associated with the strike had increasingly escalated, which necessitated these modifications.
 {¶ 11} The trial court held a hearing on Ormet's motions. It granted some of the requested modifications and denied others in identical judgment entries as follows:
 {¶ 12} (1) It denied Ormet's request to reduce the number of picketers permitted at each entrance to no more than four.
 {¶ 13} (2) It refused to rule on Ormet's request regarding the structures on State Route 7, other than stating that structures on the west side of Route 7 shall remain the same, because that issue is pending with this court.
 {¶ 14} (3) It granted Ormet's request that the possession by picketers of various explosives, projectiles, and items that could be used as weapons shall be prohibited within 1,000 yards of Ormet's property.
 {¶ 15} (4) It granted Ormet's request prohibiting the possession or use of alcohol by picketers or anyone acting on their behalf within 1,000 yards of Ormet's property and added the condition that this prohibition applied to Ormet employees too.
 {¶ 16} (5) It granted in part Ormet's request that there shall be no picket activity along Route 7 between the two plant entrances. It ordered that on the west side of Route 7, picketers shall be permitted to traverse 150 feet to the north and 150 feet to the south of each shanty located at the plant entrances. And on the east side of Route 7, at Ormet Primary, picketers shall be permitted to traverse north as far as the horseshoe pit and no more than 60 feet south of the plant entrance. At Ormet Mill, on the east side of Route 7, picketers shall be permitted to traverse 60 feet to the north and 60 feet to the south of the plant entrance.
 {¶ 17} (6) It denied Ormet's request that the union's shanties should be regularly inspected by law enforcement for the possession of prohibited items.
 {¶ 18} (7) It granted Ormet's request that picketers are not permitted on or across the railroad tracks near the plant entrances. It also added the condition that IMAC Security personnel also are not permitted on or across the railroad tracks near the plant entrances.
 {¶ 19} (8) It denied Ormet's request that shift changes for picketers shall be either one hour prior to or one hour after Ormet's shift change times. However, it added the condition that arriving picketers shall not come on line earlier than 15 minutes prior to the shift change and departing picketers shall leave no later than 15 minutes after the shift change.
 {¶ 20} (9) It denied Ormet's request that there shall be no walking back and forth on any paved entrance to its property (impeding traffic) from 30 minutes before to 30 minutes after the shift changes.
 {¶ 21} The union subsequently filed timely notices of appeal on July 7, 2005. This court also consolidated these two cases for purposes of appeal.
 {¶ 22} Initially, we must address whether the modification of a preliminary injunction in this case is a final, appealable order. In the appeals from the December 23, 2004 judgment, Ormet filed motions to dismiss for lack of a final order. An order is final when it is:
 {¶ 23} "(4) An order that grants or denies a provisional remedy and to which both of the following apply:
 {¶ 24} "(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
 {¶ 25} "(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action." R.C. 2505.02(B)(4).
 {¶ 26} A preliminary injunction is a provisional remedy. R.C.2505.02(A)(3). Therefore, an order denying or granting a preliminary injunction is a final appealable order if it satisfies the two prongs of R.C. 2505.02(B)(4).
 {¶ 27} Here, the first prong has been established. The trial court issued orders granting a preliminary injunction. Those orders determine the action with respect to the provisional remedy and prevent judgment in favor of the union with regard to that provisional remedy. See Deyerle v. City of Perrysburg, 6th Dist. No. WD-03-063, 2004-Ohio-4273.
 {¶ 28} The second prong is also met. The purpose of these particular preliminary injunctions is to set the guidelines for both picketers and Ormet employees to obey during the strike. These individuals need the picketing rules set. They would not be afforded meaningful review after a final judgment because the rules set in place now by the court affect how the picketers are able to get their message out to the public and to other employees who choose to go to work at Ormet. By the time a permanent injunction is issued in this case, if it ever is, the picketers' ability to get their message out may have already been compromised by the restrictions placed on them by the preliminary injunctions.
 {¶ 29} Thus, in this case, the issuance and modification of the preliminary injunctions is a final, appealable order.
 {¶ 30} When reviewing the grant of an injunction by a trial court, this court's standard of review is abuse of discretion.Collins v. Moran, 7th Dist. No. 02 CA 218, 2004-Ohio-1381, at ¶ 17. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. A court has discretion in framing an injunction and as long as picketing is not forbidden entirely, the court's discretion will usually be upheld. Makro, Inc. v. United Food CommercialWorkers Union Local 880 (1989), 64 Ohio App.3d 439, 445,581 N.E.2d 1143, citing Superior Savings Assn. v. Cleveland Councilof Unemployed Workers (1986), 27 Ohio App.3d 344, 501 N.E.2d 91.
 {¶ 31} In its first set of appeals, the union raises one assignment of error which it breaks down into ten issues. It states:
 {¶ 32} "THE COMMON PLEAS COURT, IN ORDERING THE EMPLOYEES TO REMOVE A `WINDBREAK' PROTECTING PICKETERS IN A LABOR DISPUTE IN THE DEAD OF WINTER IN A VERY RURAL SETTING DID NOT CONSIDER ALL THE RELEVANT FACTORS AND THUS ITS DECISION TO REQUIRE REMOVAL AMOUNTED TO A MISAPPLICATION OF THE RELEVANT LEGAL PRINCIPLES."
 {¶ 33} First, the union argues that the trial court failed to make necessary findings regarding irreparable harm, inability of law enforcement to protect against illegal conduct, and preemption by San Diego Bldg. Trades Council, Millmen's Union,Local 2020 v. Garmon (1959), 359 U.S. 236, 79 S.Ct. 773,3 L.Ed.2d 775.
 {¶ 34} The union should have raised this argument in an appeal from the original grant of the preliminary injunctions. The trial court issued the preliminary injunctions on December 2, 2004. Neither party filed a notice of appeal from these orders. This would have been the time for the union to raise arguments regarding the propriety of ordering a preliminary injunction in general. As it stands, the union only filed these notices of appeal from the court's December 23 judgments adding the condition to the already-existing preliminary injunctions that the windbreaker on the plant side of State Route 7 must be removed. Our review will be limited to that narrow issue.
 {¶ 35} Second, the union asserts that the picketers' actions are protected by the First Amendment of the United States Constitution, Article 1, Section 11 of the Ohio Constitution, and29 U.S.C. § 158(c).
 {¶ 36} In this case, by ordering the removal of the plant-side windbreaker, the trial court did not limit picketing at all. The picketers can still have a windbreaker across the street from the plant. And more importantly, these orders in no way restricted them from picketing, passing out handbills, displaying signs, or otherwise getting their message out to the public or Ormet employees. The union can point to no evidence that demonstrates that the court's orders somehow restrict their right to free speech or even restrict the right to picket at all.
 {¶ 37} Next, the union alleges that the court should have stated its reasons for ordering the removal of the windbreaker.
 {¶ 38} The trial court was not required to do so. Civ.R. 52 provides in part, "[f]indings of fact and conclusions of law required by this rule and by Rule 41(B)(2) are unnecessary uponall other motions including those pursuant to Rule 12, Rule 55 and Rule 56." (Emphasis added.) A motion to modify an injunction falls into the category of "all other motions." Thus, the trial court was not required to make such findings. Choate v. Tranet,Inc., 12th Dist. No. CA2003-11-112, 2004-Ohio-3537, at ¶ 50. Furthermore, the union never requested that the trial court issue findings of fact and conclusions of law. When a party fails to request findings of fact and conclusions of law, we must presume the regularity of the trial court proceedings. Technical Constr.Specialties v. Shenigo Constr., 6th Dist. No. E-03-004,2004-Ohio-1044, at ¶ 18.
 {¶ 39} The union's remaining arguments all concern findings or factors that it alleges the trial court failed to consider, or raise evidentiary questions. But the union did not file a transcript, or an appropriate substitute, of the hearing on the motion.
 {¶ 40} It is the appellant's duty to transmit the record on appeal, including the transcript necessary for the determination of the appeal. App.R. 10(A). "The duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record. * * * When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199, 400 N.E.2d 384. If no transcript is available, then it is appellant's duty to present this court with one of the transcript substitutes as provided for in App.R. 9(C).
 {¶ 41} Since the union failed to provide this court with a transcript or transcript substitute, we have no means by which to review its fact-based and evidence-based arguments. In its judgment entry, the trial court stated that it held an in-chamber conference on Ormet's motions to modify the preliminary injunctions. It further stated that it considered the statements made by counsel. The court then stated that it was adding the condition that any plant-side structures, including windbreakers, were to be removed. Because we have no transcript to review, we have no choice but to presume the validity of the trial court's judgment.
 {¶ 42} Based on the foregoing, we cannot conclude that the trial court abused its discretion in modifying the preliminary injunctions to add the condition that any shelters on the plant side of State Route 7 must be removed. Accordingly, the union's assignment of error is without merit.
 {¶ 43} In its second set of appeals, the union raises four assignments of error, the first of which states:
 {¶ 44} "THE COMMON PLEAS COURT ERRED IN FAILING TO ORDER VEHICLES LEAVING THE PLANT TO STOP AT A STOP SIGN, AND OBEY A BLINKING RED LIGHT, WHICH IS RED FACING THE EXIT FROM ORMET ONTO STATE ROUTE 7, AND YELLOW FACING TRAFFIC GOING NORTH AND SOUTH ON STATE ROUTE 7, WHERE THE SHERIFF STATED IN COURT THAT, BECAUSE THE TRAFFIC CONTROL DEVICES WERE ESSENTIALLY ON PRIVATE PROPERTY, HE HAD NO RIGHT TO REQUIRE THEM TO STOP."
 {¶ 45} The union argues that the trial court erred in failing to order that vehicles leaving the plants must stop at a stop sign and obey a flashing red light at the exits of the plants before turning onto Route 7 and in failing to order law enforcement to enforce such an order.
 {¶ 46} First, it should be noted that the union never filed a motion requesting this modification of the preliminary injunction. At the hearing, the union brought the issue up. It then asked the court to order that traffic must stop at the stop sign, which is located on Ormet's property.
 {¶ 47} The trial court noted that it had already ordered that all traffic was subject to a very slow five-miles-per-hour speed limit. (Tr. 63-64). And it noted that it was not going to order the sheriff to enforce a stop sign located on private property. (Tr. 64).
 {¶ 48} The trial court did not abuse its discretion in denying the union's requested modification. The union did not file a motion to modify. It only brought the stop sign issue up after the court ruled on Ormet's motions. Furthermore, as the trial court noted, it had already ordered that all traffic entering and leaving the plants was to proceed at no more than five miles per hour. Thus, it was reasonable for the court to conclude that another order requiring traffic to come to a complete stop at a stop sign on Ormet's property was unnecessary. Accordingly, the union's first assignment of error is without merit.
 {¶ 49} The union's second assignment of error states:
 {¶ 50} "THE COURT ERRED IN SETTING UP LIMITED ZONES, OUTSIDE OF WHICH PERSONS COULD NOT PICKET."
 {¶ 51} Here the union contends that the court should not have restricted the areas where picketers could picket. First, it argues that Ormet never requested this modification in its motion, so the court should not have ordered it. Second, the union argues that picketing involves walking back and forth, so the court should not restrict the picketers to just one area at each plant. It contends that this restriction violates the picketers' right to free speech since they were walking back and forth along a public street — State Route 7.
 {¶ 52} Firstly, it seems that the union raised an issue with the restriction limiting the area in which the picketers could picket not because of free speech issues, but instead because the picketers grew bored when restricted to a certain area. At the hearing, the court asked the union's counsel why the picketers needed to walk in the 1.7 mile area between the two plants. (Tr. 22). Counsel responded, "Boredom, Your Honor, would be one purpose, but we'll also put on evidence as to other purposes." (Tr. 22-23). Later in the hearing, the court asked a union representative why the picketers needed to go farther down Route 7 than 40 yards away from the plant entrances. (Tr. 42-43). The union representative reiterated what counsel had stated earlier, "the boredom factor." (Tr. 43). He then went on to explain that the picketers had a horseshoe pit set up north of the Ormet Primary plant where they liked to pass the time. (Tr. 43). The court found that it was reasonable for the picketers to go as far north as the horseshoe pit so that they could play horseshoes and made its order to reflect this. (Tr. 44). Thus, when presented with a reasonable explanation of why the picketers wished to picket further north on Route 7, the court expanded its picket zones to include the requested area.
 {¶ 53} Secondly, at the hearing, the union conceded to restrictions on where picketing could take place. It did not argue that the court should not place any restrictions on the picketing area. When discussing the parameters of the picketing area, the court asked the union's counsel what he thought of allowing 300 feet on each side. (Tr. 40). Counsel responded, "Well, it's better than a hundred and fifty feet, Your Honor. We can live with that, Your Honor." (Tr. 40).
 {¶ 54} Thirdly, it is not necessarily an infringement on free speech for a court to restrict the area in which people may picket. As the Eighth District pointed out:
 {¶ 55} "First Amendment protection is not unlimited, however.
 {¶ 56} "`* * * The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy.'" Superior Savings Assn.,27 Ohio App.3d at 345-46, quoting Cox v. Louisiana (1965),379 U.S. 536, 554, 85 S.Ct. 453, 464, 13 L.Ed.2d 471.
 {¶ 57} Although no evidence was presented at the hearing, we can glean from the comments by both sides' counsel and the court that the Ormet strike has been ongoing, heated, and at times, even violent. The court, in its closing comments, observed, "all we're trying to do here is keep peace." (Tr. 65). Given the situation, the court did not abuse its discretion in placing restrictions on the picketing area. Accordingly, the union's second assignment of error is without merit.
 {¶ 58} The union's third assignment of error states:
 {¶ 59} "THE COURT ERRED IN INCORPORATING BY REFERENCE AND/OR SUB SILENTIO ITS PREVIOUS ORDERS, RESTRICTING ANY `WINDBREAK' ON THE PLANT SIDE OF STATE ROUTE 7, AS INDICATED IN PREVIOUS APPEALS TO THIS COURT."
 {¶ 60} The union argues that the court should not have incorporated its orders restricting the use of windbreakers set out in its prior judgment entries into its subsequent entries. The union states that it incorporates its briefs in its other appeals by reference.
 {¶ 61} We have sufficiently addressed the windbreaker issue above, as it was the subject of the first appeal. Thus, as concluded above, the union's third assignment of error is also without merit.
 {¶ 62} The union's fourth assignment of error states:
 {¶ 63} "THE COURT ERRED IN GRANTING THE PRELIMINARY INJUNCTION."
 {¶ 64} Here the union argues that the trial court should not have granted the preliminary injunction in the first place.
 {¶ 65} Ormet contends that because the union failed to appeal from the court's original grant of the preliminary injunction, it has waived this argument on appeal. Ormet is correct. The gist of the union's argument here is that the court should not have granted the preliminary injunction. The court first ordered the injunction on December 2, 2004. Neither party filed an appeal from that order. The first appeal was filed by the union from the court's December 23, 2004 modification dealing with the windbreakers. Thus, by failing to appeal from the court's December 2 order, the union has waived any argument that the court should not have granted the preliminary injunction. Accordingly, the union's fourth assignment of error is considered waived.
 {¶ 66} For the reasons stated above, all of the trial court's judgments are hereby affirmed.
Vukovich, J., concurs.
DeGenaro, J., concurs.