OPINION
{¶ 1} Plaintiff-appellant, Charles Penzone, Inc. ("Penzone"), appeals from the July 13, 2007 decision and entry of the Franklin County Court of Common Pleas denying preliminary injunctive relief. At issue in this appeal is an employment contract containing a covenant not to compete.
 {¶ 2} Penzone owns and operates a number of high end beauty salon/spas in the Columbus area. Defendant-appellee, Susan S. Koster, is a former employee of Penzone. *Page 2 
She began her employment with Penzone in March 1995, after her graduation from cosmetology school. Ms. Koster went through the Penzone in-house training program, and, over the course of her employment, advanced through the ranks of hair stylists. As an employee of Penzone, Ms. Koster was trained and encouraged to develop personal relationships with her clients to enhance customer loyalty.
 {¶ 3} At the time she began her employment, Ms. Koster was asked and agreed to sign an employment agreement containing a covenant not to compete. Each time Ms. Koster received a promotion or changed positions she was asked to sign a new employment agreement, for a total of five agreements. The contract at issue here is dated March 15, 2002. The relevant passage from the non-compete agreement is as follows:
 At all times during Employee's employment, and for a period of eight (8) months after the termination of employment (for any reason, including discharge or resignation, and regardless of whether such termination is voluntary or involuntary on Employee's part) with Employer (as defined above), Employee agrees:
 * * *
 2) not to render any hair care treatment, hair care styling, massage, esthetics, nails, pedicures, or related services, directly or indirectly, whether for Employee's account or on account of any other person, firm, corporation, or entity to any persons who are or were customers of Employer and with whom Employee had personal contact during the time of Employee's employment, without regard to where those customers or the Employee's post-employment competition may be situated. * * *
Id. at 2-3. *Page 3 
 {¶ 4} The non-compete agreement also contained a nine mile geographical limitation which is not at issue in this case.
 {¶ 5} During her last three years of employment with Penzone, Ms. Koster averaged approximately 200 guests per year and 1,500 guest visits per year. On June 7, 2006, Ms. Koster notified Penzone that she would no longer be working at the salon.
 {¶ 6} Ms. Koster rented space at Salon Lofts in Pickerington, Ohio, and, on August 30, 2006, she began working as an independent contractor serving clients. It is undisputed that Salon Lofts is outside the geographical limitation of the agreement.
 {¶ 7} Penzone uses a computerized booking system to control and track client appointments. At times the system did not work properly, and employees such as Ms. Koster gave their private cell phone numbers to their customers to allow them to book appointments directly so as not to become lost in the system. After Ms. Koster left Penzone, former clients began contacting Ms. Koster on her cell phone to book appointments with her at Salon Lofts. Ms. Koster testified that she did not compile a client list when she left Penzone. She stated that the former customers contacted her; she did not solicit them. Ms. Koster believed that because she was not personally contacting former clients, she was doing nothing wrong by providing hair services to the ones who sought her out.
 {¶ 8} On February 1, 2007, Penzone filed a lawsuit against Ms. Koster alleging breach of an employment agreement and misappropriation of trade secrets. The parties agreed to a temporary restraining order on February 3, 2007. In response to discovery, Ms. Koster admitted to serving 94 to 95 clients with whom she had had contact in her final year of employment with Penzone. The trial court conducted a hearing on Penzone's *Page 4 
request for a preliminary injunction and, on July 13, 2007, denied the requested injunctive relief and dissolved the temporary restraining order.
 {¶ 9} The trial court analyzed the factors to be considered when deciding whether to grant a motion for injunctive relief, to wit: (1) the likelihood or probability of success on the merits; (2) whether issuing an injunction will prevent irreparable harm; (3) what injury to others will be caused by granting the injunction; and (4) whether the public interest will be served by granting the injunction. Corbett v.Ohio Building Auth. (1993), 86 Ohio App.3d 44, 49.
 {¶ 10} The trial court found that the agreement, on its face, fulfilled the reasonableness requirement of Ohio law. However, the trial court concluded that Penzone failed to offer evidence that Ms. Koster breached the agreement by interfering with any of its business interests, namely, its name, cachet, and clientele. The trial court found that Ms. Koster had not violated the agreement by serving former clients who sought her out. The trial court further found that, by attempting to enforce such a requirement, Penzone imposed an undue hardship on Ms. Koster by forcing her to scrutinize every potential client who walked through the salon door. In addition, the trial court found that this restriction harmed the public by prohibiting members of the public from seeking out their preferred stylist.
 {¶ 11} The trial court held that Penzone failed to prove irreparable harm by clear and convincing evidence. The trial court found the evidence of monetary loss was insufficient. In so doing, the court cited to a discussion with counsel that regardless of whether the preliminary injunction was issued or not, the issue of disgorgement of proceeds would not be ruled upon. *Page 5 
 {¶ 12} Finally, the trial court found that the eight-month time restriction began to run from the time Ms. Koster left the employment of Penzone and was not held in abeyance by the period before the temporary restraining order ("TRO") in which Ms. Koster was serving former Penzone clients.
 {¶ 13} Penzone appealed, assigning as error, the following:
 1. The trial court abused its discretion by refusing to follow binding precedent set forth by the Ohio Supreme Court and the Tenth District Court of Appeals requiring that reasonable contractual restrictive covenants be enforced.
 2. The trial court abused its discretion in refusing to enforce the parties' contractual restrictive covenants, despite holding that the contractual terms were reasonable.
 3. The trial court abused its discretion when it refused to enforce the unambiguous language in the parties' contract prohibiting the provision of services by Koster to Penzone's customers for eight months.
 4. The trial court abused its discretion in holding that the time period during which Koster was violating the restrictive covenant in her employment agreement, nevertheless counted towards satisfaction of the time period covered by the restrictive covenant. Such holding is also directly contradictory to binding precedent set forth by the Ohio Supreme Court and the Tenth District Court of Appeals.
 {¶ 14} We elect to address the first three assignments of error together as they are interrelated.
 {¶ 15} At the outset, we note that the decision whether to grant or deny a preliminary injunction is within the sound discretion of the trial court. Perkins v. Village of Quaker City (1956), 165 Ohio St. 120, syllabus. In addition, the standard of review for a denial of a preliminary injunction is an abuse of discretion. Garono v. State
(1988), *Page 6 37 Ohio St.3d 171, 173; Premier Health Care Services, Inc. v. Schneiderman,M.D., Montgomery App. No. 18795, 2001-Ohio-7087.
 {¶ 16} In Ohio, reasonable covenants not to compete will be enforced. "A covenant not to compete which imposes unreasonable restrictions upon an employee will be enforced to the extent necessary to protect an employer's legitimate interests." Raimonde v. Van Vlerah (1975),42 Ohio St.2d 21, paragraph one of the syllabus. "A covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if the restraint is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public." Id. at paragraph two of the syllabus. Moreover, when faced with a covenant not to compete that imposes restraints that exceed what is necessary to protect the employer's legitimate business interests, the courts are empowered to modify the terms to create a reasonable covenant between the parties.Rogers v. Runfola Associates, Inc. (1991), 57 Ohio St.3d 5, 8. Therefore, if the restrictive covenant contained in an employment agreement is reasonable, the provision is enforceable.
 {¶ 17} Penzone argues that the trial court failed to consider the plain language of the agreement and gave no credence to uncontradicted evidence that Ms. Koster breached the agreement. Penzone also argues that the trial court erred in finding Penzone's interpretation of the contract to be unreasonable despite finding that "on its face" the covenant not to compete was reasonable. We agree.
 {¶ 18} The trial court apparently believed that, because Penzone could not prove that Ms. Koster solicited her former clients, there was no evidence of breach. However, the language of the agreement prohibits Ms. Koster from rendering hair care services to *Page 7 
former Penzone clients with whom Ms. Koster had contact during her employment. It was clear from Ms. Koster's own testimony, and the receipts from former customers, that prior to the issuance of the TRO, Ms. Koster had rendered hair care services to at least 94 former Penzone clients. This was a clear violation of the terms of the agreement. Thus, it is Ms. Koster's interpretation of the agreement that is in error, not Penzone's.
 {¶ 19} The trial court stated that, on its face, the employment agreement fulfilled the reasonableness requirement of Ohio law. The trial court, however, found it unreasonable that the agreement prohibited Ms. Koster from serving former clients for an eight-month period if she had not solicited them. We think this conclusion is erroneous in light of the types of restrictive covenants the courts have upheld. For example, in Rogers, supra, the Supreme Court of Ohio restricted court reporters from rendering any court reporting services within the city of Columbus for one year, and from soliciting or diverting any clients of Runfola for one year. Here, the restrictions were more moderate, a nine mile radius and an eight-month restriction. Based on precedent from the Supreme Court of Ohio and the types of services the company provides, the conditions imposed by Penzone cannot be considered unreasonable.
 {¶ 20} As far as undue hardship to Ms. Koster and harm to the public, the trial court's decision was unreasonable and failed to take into account the evidence. All non-compete agreements create some level of hardship. Even considering the extreme loyalty some clients maintain with their hair stylists, the injury to the public that would ensue by enforcing an eight-month hiatus is de minimus. The hardship to the public is analyzed by whether hair styling services are available, not whether the services of a particular hair stylist are available. Cf.Brentlinger Enterprises v. Curran (2001), *Page 8 141 Ohio App.3d 640, 653 (public may be harmed where enforcement of a non-compete clause would result in an employer having a near monopoly for its products or services in a given market). Additionally, it appears that requiring Ms. Koster to "scrutinize every potential client who walks through her salon door" does not rise to the level of undue hardship sufficient to deny preliminary injunctive relief. Ms. Koster was readily able to identify her former Penzone clients by analyzing her credit card receipts during discovery. The trial court's rationale with respect to these elements is not supported by the law or the evidence.
 {¶ 21} Ms. Koster further contends there was insufficient evidence of irreparable harm because Penzone did not present evidence that its revenues declined after Ms. Koster left. We disagree.
 {¶ 22} Brian Goetz, Director of Salon Operations at Penzone, testified that a purpose of the covenant not to compete was to allow Penzone to protect the investment it has made in training and marketing to attract and retain clientele. The agreement allows Penzone a time period and a distance restriction to allow Penzone to retain clients as loyal Penzone customers. There was testimony in the record that Penzone spends in excess of $600,000 per year to market its services, as well as investing in training to develop their employees' social skills in creating one-on-one relationships with the clients. Penzone believes that developing these relationships results in loyal Penzone customers. Protecting customer relations is a legitimate employer interest.Miller Medical Sales, Inc. v. Worstell (Feb. 18, 1992), Franklin App. No. 91AP-610.
 {¶ 23} Mr. Goetz testified that overall salon revenue was not the correct standard by which to determine irreparable harm. He stated that the revenue Penzone would have *Page 9 
had from retaining Ms. Koster's clients is the harm to Penzone. Obviously, such lost revenue is nearly impossible to quantify as there is no way to predict how many years a client will remain loyal to Penzone or how many or what services the client will request. The impact and value of the loss of at least 95 clients cannot be determined. Therefore, it was an abuse of discretion to ignore the evidence of the harm to Penzone through the loss of its customers and the loss of opportunity to retain them. Penzone's first three assignments of error are well-taken and sustained.
 {¶ 24} In its fourth assignment of error, Penzone attacks the decision of the trial court to count the eight-month restriction as beginning when Ms. Koster left Penzone and running for the next eight months, notwithstanding the period of time when Ms. Koster was admittedly rendering services to her former Penzone clients.
 {¶ 25} Both this court and the Supreme Court of Ohio have held that it would emasculate the intent of Civ.R. 54(C) to hold that the plaintiff is entitled to an injunction, but cannot enforce it because the time period restriction has passed since the employee left employment. SeeRunfola, at 9, quoting Raimonde, at 16; Columbus Medical Equip. Co. v.Watters (1983), 13 Ohio App.3d 149, 152. The clear intent of these cases is that an injunction must account for periods of noncompliance in order to make judicial enforcement effective.
 {¶ 26} In this case, Ms. Koster refrained from serving former Penzone customers during the approximate five-month period of time that the TRO was in effect (TRO entered into on February 3, 2007 and dissolved on July 13, 2007). Penzone has not had the benefit of the full eight months in which it could make efforts to retain its clients. The trial court abused its discretion when it credited Ms. Koster for the period of time in which *Page 10 
she was serving her former clients. Penzone's fourth assignment of error is well-taken and is sustained.
 {¶ 27} Based on the foregoing, Penzone's four assignments of error are sustained. The judgment of the Franklin County Court of Common Pleas is reversed and the case is remanded to the Franklin County Court of Common Pleas for further proceedings in accordance with this opinion.
Judgment reversed and remanded for further proceedings.
 BRYANT and KLATT, JJ., concur. *Page 1