[Cite as *Lykins Oil Co. v. Corbin*, 2021-Ohio-1126.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

LYKINS OIL COMPANY, d.b.a. LYKINS : 
ENERGY SOLUTIONS,

      Appellant, :       CASE NO. CA2020-07-036

:       O P I N I O N
      4/5/2021

      - vs - :

:

HOMER C. CORBIN, JR. a.k.a. JOHN :
CORBIN, JR., et al.,

      Appellees. :


CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2020 CVH 00003


Stagnaro, Saba & Patterson Co., L.P.A., Peter A. Saba, Jeffrey M. Nye, Joshua M. Smith, 2623 Erie Avenue, Cincinnati, Ohio 45208, for appellant

Freking Myers & Reul LLC, George M. Reul, Jr., 600 Vine Street, 9th Floor, Cincinnati, Ohio 45202, for appellee Homer C. Corbin, Jr., a.k.a. John Corbin, Jr.

Black, McCuskey, Souers & Arbaugh, Brain R. Mertes, 220 Market Avenue South, Suite 1000, Canton, Ohio 44702, for appellee RJ Wright and Sons, Ltd.


**PIPER, P.J.**

{¶1} Appellant, Lykins Oil Company, d.b.a. Lykins Energy Solutions, appeals a decision of the Clermont County Court of Common Pleas grating a joint motion to modify a preliminary injunction in favor of appellees John Corbin, and his employer, RJ Wright and

Sons, LTD.[1]

{¶2} Lykins is a wholesaler and distributor of gasoline, diesel fuel, and other petroleum products.[2] Lykins employed Corbin as a sales representative from 2010 until 2019. During his time with Lykins, Corbin worked in various geographic locations throughout the United States. Within these areas, Corbin serviced approximately 100 Lykins customers and grossed over $72 million in sales during his last year of employment.

{¶3} According to Lykins, Corbin was trained on several of Lykins' trade secrets and related confidential business information, including knowledge of customers, financial records, pricing, and various marketing strategies. Corbin also participated in weekly sales meetings with Lykins' sales staff during which the representatives discussed Lykins' sales methods and customers. Corbin also maintained Lykins' "Quote Matrix," which contained detailed and specific customer information as well as data on supplier and shipping networks.

{¶4} It is undisputed that at the start of Corbin's employment with Lykins, he signed a non-compete, non-solicitation, and confidentiality agreement ("Non-Compete Agreement"). Corbin's Non-Compete Agreement prohibited him from engaging in competition or attempted competition throughout Ohio, Indiana, Kentucky, and "any other geographic area or territory in which [Corbin] represented [Lykins] for three consecutive months or longer during [his] last three years of employment."

{¶5} It is also undisputed that Corbin was terminated by Lykins in September 2019,

---

1. According to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar for the purposes of issuing this written opinion.

2. As discussed later, the parties stipulated to an agreed preliminary injunction and the trial court neither held an evidentiary hearing nor provided findings of fact or conclusions of law related to whether Lykins was entitled to a preliminary injunction. As such, several facts are in dispute regarding the history precipitating the preliminary injunction, and the events that occurred after the stipulation was accepted by the trial court. With full acknowledgment of the factual disputes, we offer a factual background for context, as well as to help frame our review. However, nothing in this written decision is meant to determine facts in dispute or decide the merits of pending issues other than the matters related to the direct issues on appeal.

and hired thereafter by RJ Wright.  While the exact nature of the relationship between RJ Wright and Lykins is undetermined, the record indicates that RJ Wright is both a vendor to Lykins and a competitor who engages in the same wholesale and distribution business. Corbin allegedly began using information he obtained during his time with Lykins in his work for RJ Wright, including the Quote Matrix.  Corbin also purportedly communicated with Lykins' customers, asking some to cease their purchases from Lykins or offering competitive deals with RJ Wright.  Corbin also supposedly suggested that RJ Wright expand into areas of operation he had worked in during his time with Lykins.

{¶6}    Lykins sued Corbin and RJ Wright in January 2020 and moved for a temporary restraining order and preliminary injunction.  Before a hearing was held on Lykins' request, the parties stipulated to an Agreed Preliminary Injunction, which in part prohibited Corbin from providing services to RJ Wright.  Regarding the restrictions on Corbin's employment with RJ Wright, the parties agreed:

> Corbin shall be prohibited from the following:  (i) directly or indirectly engaging in or rendering any services with respect to the general business of RJ Wright, including but not limited to the conduct of selling, soliciting, promoting or performing the distribution and sale of petroleum products including gasoline, diesel fuel, lubricants, kerosene and Diesel Exhaust Fluid on behalf of RJ Wright; (ii) directly or indirectly contacting, diverting, soliciting, or attempting to contact, divert or solicit, any business from any potential or prospective customers on RJ Wright's behalf; (iii) directly or indirectly communicating with RJ Wright employees, officers, agents, and customers regarding any business activity or related business matter; and, (iv) directly or indirectly using or participating in the use of any associated RJ Wright technology, including,  but not limited to, RJ Wright's computers, cell phones, licensed software.

{¶7}    With the stipulated agreement in place, the parties proceeded to discovery. Approximately two months later, and during the beginning of the Covid-19 pandemic, RJ Wright and Corbin moved the court to modify the preliminary injunction.  RJ Wright and Corbin requested modifications that would allow Corbin to work for RJ Wright in

Pennsylvania, West Virginia, Texas, and Oklahoma. In so doing, RJ Wright claimed that Corbin's services were needed to pursue various undisclosed business opportunities.

{¶8} Lykins opposed the requested changes. In so doing, Lykins argued that neither Corbin nor RJ Wright presented evidence of a change in circumstances since the time of the stipulated agreement and that the proposed modification would directly violate Corbin's Non-Compete Agreement.

{¶9} In support of its opposition, Lykins submitted affidavits that Corbin had represented Lykins for more than three consecutive months in Pennsylvania, West Virginia, and Texas. In response, Corbin submitted an affidavit in which he generally asserted that the information regarding his sales and services as provided by Lykins was inaccurate.

{¶10} After delays related to the pandemic, the trial court held a hearing in May 2020 on the defendants' joint request to modify. During that hearing, the trial court denied Lykins' request to call Corbin as a witness for cross-examination purposes after defense counsel stated that Corbin was not prepared to testify. In June 2020, the trial court granted Corbin and RJ Wright's motion, modifying the preliminary injunction "to allow Mr. Corbin to work for RJ Wright, as an active participant in petroleum sales, in West Virginia, Pennsylvania, Oklahoma, and Texas."

{¶11} Lykins now appeals the trial court's decision, raising one assignment of error for our review. However, before we address Lykins' argument on appeal, we will first address two preliminary issues that may have otherwise prevented appellate review.

## I. Final Appealable Order[3]

{¶12} First, we will address whether the trial court's modification of the preliminary

---

3. RJ Wright and Corbin filed a motion to dismiss for lack of a final appealable order. This court denied the motion. However, we address the issue herein for contextual purposes and to share our reasoning for denying the motion.

injunction is a final appealable order.

{¶13}  According to R.C. 2505.02(B)(4), an order is final when it is:

>    (4)  An order that grants or denies a provisional remedy and to which both of the following apply:

>    (a)  The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

>    (b)  The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

{¶14}  Here, the first prong has been established.  The trial court issued orders modifying the preliminary injunction, which determined the action with respect to the provisional remedy and prevented judgment in favor of Lykins regarding its requested maintenance of the status quo.

{¶15}  The second prong is also met.  The purpose of the preliminary injunction and subsequent modification is to establish guidelines for Corbin's permitted and prohibited conduct during the time that his Non-Compete Agreement is in place.  All parties need to proceed according to the terms of the preliminary injunction, some of which impact trade secrets and restricted competition.  However, Lykins would be denied meaningful review after a final judgment because the guidelines in place after the modification specifically impact Corbin's ability to work for RJ Wright in areas where he may be prohibited from working and with customers with whom he may be prohibited from soliciting according to the terms of his Non-Compete Agreement.

{¶16}  Thus, by the time a final judgment is entered on the matter, Lykins may have already been compromised by the modifications to the preliminary injunction that allow Corbin to work in certain geographic locations.  As such, the modification of the preliminary injunction is a final, appealable order.

## II. Mootness Doctrine[4]

{¶17} Next, we address why this issue is not moot even though the yearlong prohibition timeframe agreed to within Corbin's Non-Compete Agreement has since expired during the pendency of the appeal.

{¶18} A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Villas at the Pointe of Settlers Walk Condominium Ass'n v. Coffman Dev. Co.*, 12th Dist. Warren No. CA2009-12-165, 2010-Ohio-2822, ¶ 9.

{¶19} At first blush, the arguments raised by Lykins appear moot given that Corbin's Non-Compete Agreement was to last one year from the date of his termination in 2019. However, caselaw is clear that if a plaintiff is entitled to an injunction, he or she must not be precluded from enforcing the judgment simply because the agreement's expiration occurs during the related litigation. *Rogers v. Runfola & Assocs.*, 57 Ohio St.3d 5, 9 (1991).

{¶20} In *Rogers*, the Ohio Supreme Court was asked to determine the validity of a non-compete clause, and in so doing, was also asked to decide the valid timeframe of the prohibition if such clause was validated. The court determined that the clause was valid and then held that the proper approach to enforcing a non-compete clause is to use the date of the trial court's order going forward. Otherwise, the court reasoned, using the termination date of the non-compete agreement would "emasculate the clear intent of" the civil rules.

{¶21} While it is true that the one-year anniversary of Corbin's termination has since passed, the one-year timeframe since the trial court amended the injunctive orders has not.

---

4. The issue of mootness arose after the filing of the parties' briefs. As such, this court requested that the parties file supplemental briefs on the issue. Both parties obliged our request, raising arguments in support of and in opposition to finding the appeal moot. Thus, we provide our analysis herein for determining that the appeal is not moot.

As such, the trial court's injunctive orders are still pending as of the rendering of this decision, and the arguments raised by Lykins regarding those orders are ripe for review.

{¶22} Moreover, Ohio law provides that "an injunction must account for periods of noncompliance in order to make judicial enforcement effective." *Charles Penzone, Inc. v. Koster*, 10th Dist. Franklin No. 07AP-569, 2008-Ohio-327, ¶ 25.

{¶23} The record indicates that Corbin has continued to communicate with RJ Wright, and has also communicated with Lykins' customers. In fact, the trial court scheduled a show cause hearing to determine whether Corbin should be held in contempt for noncompliance with the injunctive orders. However, given the pendency of this appeal, the trial court did not have jurisdiction to rule on the matter and will need to do so once it regains post-appeal jurisdiction.

{¶24} Thus, it is apparent that using the date of the trial court's orders or the possible noncompliance period, Lykins has not had the benefit of the full year of Corbin's Non-Compete Agreement in which it could make efforts to retain its clients. Thus, the issue is not moot, and we will determine the merits of Lykins' appeal as argued in its sole assignment of error:

{¶25} THE COMMON PLEAS COURT ERRED WHEN IT MODIFIED THE PRELIMINARY INJUNCTION.

### III. Merits of Modification

{¶26} Lykins argues in its assignment of error that the trial court erred in modifying the preliminary injunction.

#### A. Change in Circumstances

{¶27} "A court issuing [an] injunction has inherent authority to modify or vacate its own injunctive decree." *Cleveland v. Ohio Dept. of Mental Health*, 84 Ohio App.3d 769, 773 (10th Dist.1992). "A court must never ignore significant changes in the law or

circumstances underlying an injunction lest it becomes inequitable that the injunction should have prospective application." *Id.*

{¶28} Ohio law is not abundant on the issue of modification of preliminary injunctions, but appellate courts have upheld modification of injunctive relief based upon a change in circumstances. *Ormet Aluminum Mill Prods. Corp. v. USW, AFL-CIO, Local 5760*, 7th Dist. Monroe Nos. 05-MO-1, 05-MO-2, 05-MO-10, 05-MO-11, 2006-Ohio-3782, ¶ 7. *See also Bd. of Trustees v. Baumgardner*, 11th Dist. Geauga No. 2006-G-2721, 2007-Ohio-1783, ¶ 38 (noting that a change in circumstances may warrant a modification of injunctive relief).

{¶29} In *Ormet*, the party seeking modification of a preliminary injunction in a labor strike situation provided evidence that circumstances had changed since the issuance of the preliminary injunction specific to how protestors were conducting themselves. These changed circumstances included increased violence and picketers engaging in activities such as throwing objects at employees' vehicles, using sling shots to shoot objects at employees and guards, shining laser lights in the eyes of guards, and otherwise damaging vehicles. Based upon the cited changes, the party seeking modification asked that the preliminary injunction be amended to help eliminate the activities described above.

{¶30} In affirming, the *Ormet* Court determined that the trial court's modifications constituted a final appeal order and were warranted based upon the increased violence that had occurred since the issuance of the original preliminary injunction. The appellate court affirmed the trial court's modifications to the original preliminary injunction because the evidence proved a change in circumstances had occurred. *Id.* at ¶ 57.

{¶31} Thus, in order for the trial court in the case sub judice to modify the original preliminary injunction, there must have been evidence presented of a change in circumstances upon which to base a finding that a change had occurred. However, upon

review of the record, the trial court determined that it was unable to analyze the change in circumstances issue because it had not fashioned the terms of the original injunctive relief.

{¶32} In its modification entry, the trial court stated, "in this case, since the preliminary injunction was agreed to by the parties, the Court cannot weigh the facts to determine whether a change in circumstances exists." Despite the trial court's determination that it was unable to perform the necessary analysis, it later stated in its entry,

> to the extent that a change of circumstances is required, there is a new RJ Wright customer in West Virginia that was not previously contemplated in the agreed preliminary injunction, who is not a current or prospective customer of Lykins. Therefore, there has been at least once [sic] change that would warrant modification given that the complaint only prays for injunctive relief relative to Ohio.

{¶33} However, given the trial court's first statement that it could not weigh the facts to determine whether a change in circumstances existed, we cannot determine that the trial court's analysis of the issue was valid according to Ohio law. There is no indication in the trial court's entry that it based its decision to modify after analyzing the issue specific to the necessary weighing of facts and the proper legal analysis of the issue. This is especially true where the court referenced only one possible customer and never addressed whether that one possibility was significant enough to render the circumstances changed since the time of the preliminary injunction.

{¶34} Instead, the trial court modified the preliminary injunction based upon its explicit finding that the original preliminary injunction was "exceedingly broad and over burdensome relative to Mr. Corbin's employment with RJ Wright." The trial court analyzed the relevant modification using equity principles, noting that "equity" was the "primary focus" of its inquiry. The trial court made this finding despite the prevailing rule of law that a change of circumstances is required, and despite the fact that the parties *themselves*, including

Corbin and RJ Wright, fashioned the terms of the preliminary injunction.[5]

{¶35} As noted above, the parties stipulated the terms of the original preliminary injunction, and such was accepted and recorded by the trial court as the court's official orders. Thus, the parties' agreement rendered a hearing on the matter unnecessary and no evidence was submitted for the court's consideration. Even so, the terms of the preliminary injunction, to which both parties agreed, clearly prescribe prohibited conduct for both Corbin and RJ Wright based upon stated geographic areas because of Corbin's Non-Compete Agreement. However, the fact that the parties stipulated the terms of the injunctive relief do not diminish the trial court's ability to "weigh the facts" to determine whether a modification was proper based upon a change in circumstances.

{¶36} The parties proceeded believing that the trial court was in a proper position to determine whether a modification of the original preliminary injunction was warranted based upon changed circumstances. During the hearing on Corbin and RJ Wright's joint motion to modify, the parties understood that a change in circumstances was necessary in order to proceed on modification.[6]

{¶37} Defense counsel referenced "changed circumstances that would allow the Court to reconsider the preliminary injunction." Counsel further indicated that the trial court "could easily do that by reading the contract and understanding that what RJ Wright and John Corbin are seeking is not prohibitive." When the trial court asked defense counsel whether "there needs to be a change of circumstances to modify a preliminary injunction,"

_____

5. When referencing a change of circumstances, the trial court's point of comparison was to the complaint -- not the comprehensive agreement subsequently reached by the parties.

6. The trial court stated during the hearing, "I didn't even know there needed to be a change of circumstances, to be honest with you, and that's why, you know, and I have to look at the law." Later in the hearing, the trial court reiterated, "I didn't even know there needed to be a change of circumstances, honestly * * *. I don't want to miss the initial requirement that there's a change of circumstances required, because then it all goes to heck in a hand basket, if I don't make those findings. And so I want to know how I'm supposed to make those findings, and what the basis for those were."

defense counsel answered, "I would agree that there has to be a change in circumstances." In support of its requested modification, defense counsel argued that the trial court could take judicial notice of the Covid-19 pandemic, and that such constituted a change in circumstances because of various constraints imposed upon the litigation as well as the nation's pandemic-related economic struggles.

{¶38} Plaintiff's counsel agreed that RJ Wright and Corbin held the burden to prove "significant changes in fact, law, or circumstances since the prevailing ruling." However, Plaintiff's counsel argued that the pandemic did not change the contents of Corbin's Non-Compete Agreement, and that circumstances had not changed since the time of the original injunction regarding the prohibitions on Corbin's employment with RJ Wright.

{¶39} Without addressing the merits of the parties' arguments, we agree with the parties that the trial court was required to first find a change in circumstances based upon a balancing of the facts before modifying the preliminary injunction. Moreover, we find that the trial court was able to determine whether circumstances had changed despite the parties stipulating the terms of the original injunctive relief. The trial court was in a proper position to accept and weigh evidence of any changes that had occurred subsequent to the parties' stipulation and to determine whether such evidence warranted modification.

B. Ability to Elicit Evidence

{¶40} Despite the trial court's need to determine whether a change in circumstances occurred based on a balancing of the facts, the record demonstrates that the trial court improperly limited Lykins' ability to present evidence specific to the change in circumstances issue. During the hearing, plaintiff's counsel stated,

> We do have some evidence to present today, Your Honor. And I think the most effective way to do that, we would like to call Mr. Corbin to the stand and as if on cross-examination, and ask some questions that are relevant to the affidavit that he's presented to this Court, and to submit some documents to the

court. I believe you indicated that we're going to be free to present whatever evidence we want to present. If you want to treat it as an evidentiary hearing, we can treat it as an evidentiary hearing.

{¶41} The trial court then asked defense counsel for a reply and defense counsel raised an objection, arguing that Corbin was not prepared to testify. The trial court noted that fears related to the Covid-19 pandemic had led to delays in the case and holding in-person proceedings. The court then stated,

the dilemma I'm having is, is everyone's afraid of the virus, but then everyone's looking to me to solve this problem. So I said, get your asses in here and we'll have a hearing. I mean, that's what I said, and I probably did say, whatever you need to do, you need to do because you made it clear that you didn't have all the discovery you wanted, and I believed you * * *.

However, the trial court ultimately determined that it would not permit Lykins to call Corbin to elicit evidence on the relevant issues.

{¶42} During the hearing, defense counsel stated that RJ Wright had an opportunity to pursue working with a company based in Fort Worth, Texas that had a need for fuel in West Virginia. It requested modification of the preliminary injunction to allow Corbin to work with this prospective client. Defense counsel told the trial court that the client was "not a customer of Lykins," but would not name the prospective client. Defense counsel then indicated that working with the customer "could potentially lead to others."

{¶43} Lykins had presented an affidavit to the trial court in anticipation of the hearing in which it was averred that Corbin had worked with Lykins' customers in West Virginia thus rendering that state geographically prohibited based on the preliminary injunction.

{¶44} The relevant issues thus included in what geographic areas Corbin performed services for Lykins and its customers, including the areas of Texas and West Virginia, as well as what services Corbin performed. While RJ Wright and Corbin alleged that Corbin was not prohibited from working with a prospective client in West Virginia and Texas, Lykins

countered that Corbin had engaged in "business transactions, whether dealing with bringing product in, shipping product out" in the contested areas. However, Lykins was unable to develop anything more than what it had already submitted or what it was able to argue because of the trial court's denial of its request to call Corbin as a witness.

{¶45} The trial court relied solely upon materials submitted by the parties and denied Lykins the ability to render evidence from a key source: Corbin's in-person testimony. This is true even after the court admitted that it had intimated to Lykins its ability to do "whatever you need to do" and despite recognizing during the hearing its authority to require Corbin to testify.

{¶46} There is no doubt that Corbin would have crucial testimony based upon his employment history with Lykins, including with which Lykins' customers and in what geographical locations he had worked in the last months of his employment. The trial court even noted in its decision, "Mr. Corbin does have personal knowledge of which accounts he actually worked on for Lykins." Permitting Corbin to give testimony explaining the circumstances would likely have given the trial court pertinent information directly relevant to the issues at hand.

{¶47} Moreover, the importance of Corbin's in-person testimony was elevated given the implications in the record that Corbin may have been less than truthful in his averments. During the hearing, the trial court stated,

> If Mr. Corbin's lying to the Court, then he may end up in jail for lying to the court. And I mean, I have to have accurate information and I'm not in a position as one person with no commercial experience, to know exactly who's telling the truth. But for me, what's at issue here is, is did he ever do business in the state - - for Lykins - - in the states that he's asking the Court to allow him to do business in an effort to modify the preliminary injunction.

Even so, the trial court unnecessarily limited the evidence to submitted materials rather than

permitting key cross-examination of Corbin's integral testimony and possible credibility issues.

### IV. Conclusion

{¶48} We find the trial court's decision erroneous for two reasons. First, the trial court improperly determined that it was unable to weigh the evidence regarding a change in circumstances. Secondly, the trial court denied Lykins the ability to present evidence in the form of Corbin's cross-examination despite being told beforehand that it would be able to do "whatever" it needed to do to develop necessary evidence.

{¶49} On remand, the trial court shall allow the parties to develop necessary evidence, and the trial court shall determine whether there has been a change in circumstances after fully weighing all relevant evidence, including that stipulated by the parties.[7]

{¶50} Judgment reversed and the cause is remanded for further proceedings consistent with this decision.

S. POWELL and M. POWELL, JJ., concur.

---

7. Once again, this court makes no pronouncement on the merits of the change in circumstances decision, nor on any related issues such as in findings of fact or credibility determinations.